O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNIE HAMILTON, ANTHONY KILLION, KRISTOPHER KACZANOWSKI, LEROY COKER, DARRELL BROWN, on behalf of himself and all similarly situated persons, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC. dba Arizona Knight Transportation Inc.; KNIGHT PORT SERVICES, LLC; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 5:21-cv-01859-MEMF-SP<br><br>**ORDER GRANTING IN PART EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF No. 96]** |

Before the Court is an Ex Parte Application for a Temporary Restraining Order filed by Plaintiffs Bennie Hamilton, Anthony Killion, Kristopher Kaczanowski, Leroy Coker, and Darrell Brown. ECF No. 96. The Court deems this matter appropriate for resolution without oral argument. See C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court GRANTS IN PART the Ex Parte Application for a Temporary Restraining Order.

///

I. **Background**

The Court addressed the background of this litigation at length in a previous Order. *See* ECF No. 91. The Court will only address aspects here that are relevant to this Order.

A. **Background as to this Litigation.**

Plaintiff Bennie Hamilton ("Hamilton") filed a class action complaint in this Court on November 2, 2021. ECF No. 1. He has since filed a First Amended Complaint, a Second Amended Complaint, and a Third Amended Complaint. *See* ECF Nos. 10, 42, 66. In the Third Amended Complaint ("TAC"), Hamilton is joined by Plaintiffs Anthony Killion ("Killion"), Kristopher Kaczanowski ("Kaczanowski"), Leroy Coker ("Coker"), and Darrell Brown ("Brown," or collectively with Hamilton, Killion, Kaczanowski, and Coker, "Plaintiffs"). *See* ECF No. 66. Plaintiffs bring suit in the TAC against Defendants Knight Transportation Inc. ("Knight Transportation") and Knight Port Services, LLC ("Knight Port," or collectively with Knight Transportation, "Defendants").[1] *See id.*

Plaintiffs allege various wage and hour violations against Knight Transportation and Knight Port on behalf of themselves and a purported class. No class has yet been certified, and Plaintiffs' Motion for Class Certification is currently pending and set for a hearing in February of 2025. *See* ECF No. 93, 110.

B. **The *Martinez* Action and Stay of this Action.**

In an action distinct from this one, and filed prior to the filing of this action, Plaintiffs Raul Martinez ("Martinez") and Philippe Vieux ("Vieux") filed a class action (the "*Martinez* Action") in San Bernardino County Superior Court on July 7, 2020, which was removed to this Court on April 1, 2021. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 1 (C.D. Cal. Apr. 1, 2021). Martinez and Vieux brought the *Martinez* Action against Knight Transportation, and alleged various wage and hour violations on behalf of themselves and a purported class. *See id.*

---

[1] Defendant Kold Trans, LLC—referenced in the caption of this action on the Court's CM/ECF system, *Bennie Hamilton v. Kold Trans, LLC et al*—was dismissed as a Defendant in the TAC. *See* ECF No. 66; *see also* ECF No. 91 at 2 (Order describing procedural history in detail).

The parties to the *Martinez* Action reached a settlement on behalf of themselves and the purported class, and Martinez filed a Motion for Preliminary Approval of Class and Representative Action Settlement on July 20, 2023. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 37 (C.D. Cal. July 20, 2023). The Court preliminarily approved the class settlement on December 5, 2023. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 53 (C.D. Cal. Dec. 5, 2023). Pursuant to that preliminary approval, Class Notice was sent to the putative class members. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 62-4 at 8–23 (C.D. Cal. Apr. 10, 2024). The Class Notice stated the following (along with other information):

> You are receiving this Notice because a proposed settlement has been reached in the following case pending in the United States District Court for the Central District of California: Raul Martinez and Philippe Vieux v. Knight Transportation, Inc., Case No. 5:21-cv-00572-MEMF-SP (the "Lawsuit"). You may be entitled to benefits as a member of the Settlement Class if the Court approves the settlement described in this Notice.
>
> . . .
>
> **YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT ARE:**
>
> **Do Nothing[:]** If you want to participate and receive your share of the money from the settlement, you do not need to do anything. If you do nothing, you will be mailed a settlement payment and you will be releasing certain claims.
>
> **Object[:]** If you want to object to the settlement, you must submit in writing the reason(s) why you think the settlement should not be approved by the deadline stated below.
>
> **Exclude Yourself[:]** If you exclude yourself (or "opt-out") from the settlement, you will not receive any share of the money from the settlement. You will still receive your share of the PAGA settlement (described below).
>
> **. . .**
>
> On December 5, 2023, the Court preliminarily approved the proposed Settlement and certified the Settlement Class for purposes of Settlement only. You have received this Notice because Knight's records indicate that you are a member of the Settlement Class. This Notice is designed to inform you of how you can participate in the Settlement, request to be excluded from the Settlement Class, or object to the Settlement. Unless you submit a request to be excluded from the Settlement Class, the Settlement, if finally approved by the Court, will be binding on you.
>
> . . .
>
> If the Court approves the proposed Settlement, it will enter judgment as to all Settlement Class Members who do not timely request exclusion from the Settlement.

. . .

> If the Court does not approve the proposed Settlement, the Lawsuit will proceed as if no settlement has been attempted and there can be no assurance that the Settlement Class Members will recover more than is provided for in this Settlement or anything at all.

*See id.* (capitalization and emphasis in original).

While final approval of the settlement in the *Martinez* Action was pending, Plaintiffs in this action became aware of the *Martinez* settlement and objected to it. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 61 (C.D. Cal. Apr. 8, 2023). Pursuant to Plaintiffs' Motion, the Court stayed this action pending the determination of whether to approve the final settlement in *Martinez*. *See* ECF No. 91.

On June 11, 2024, the Court issued an Order denying final approval of the *Martinez* settlement. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 74 (C.D. Cal. Apr. 8, 2023). The Court lifted the stay in this action as a result. *See* ECF No. 99. The *Martinez* Action is now stayed. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 74 (C.D. Cal. Apr. 8, 2023).

### C. The Instant Application and Related Filings.

Plaintiffs filed their Motion for Class Certification on July 11, 2024. *See* ECF No. 93. On September 16, 2024, Defendants filed an Ex Parte Application to Continue the deadline for their Opposition to the Motion for Class Certification. *See* ECF No. 94. Plaintiffs opposed Defendants' Ex Parte Application. *See* ECF No. 95.

Plaintiffs filed the instant Ex Parte Application for a Temporary Restraining Order on September 18, 2024, along with various supporting documents. *See* ECF No. 96 ("Application"); ECF Nos. 96-1–96-8. Defendants filed an Opposition to the Application on September 20, 2024. *See* ECF No. 97. Plaintiffs filed a Supplemental Declaration in support of the Application on September 20, 2024. *See* ECF No. 98. Defendants filed a Supplemental Declaration in opposition to the Application on September 26, 2024. *See* ECF No. 96.

On September 20, 2024, the Court issued an Order granting in part Defendants' Ex Parte Application to Continue the deadline for their Opposition to the Motion for Class Certification. *See* ECF No. 99. The Court noted that the instant Ex Parte Application for a Temporary Restraining

Order was also pending at that time, but explained that the Court would address the Application in a separate order. *See id.* Since then, the Motion for Class Certification has been fully briefed. *See* ECF Nos. 100–107, 112–129. The Court will address the Motion for Class Certification in a separate Order.

**II.     Applicable Law**

As a general matter, the legal standard for a temporary restraining order ("TRO") is substantially similar to the standard for a preliminary injunction. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test"). Under the "serious question" approach adopted by the Ninth Circuit, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

At this stage, the Court need only determine whether Plaintiffs have met their burden for their requested TRO. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir. 1980). Accordingly, the Court is not making a final decision on the merits of any claim, nor is it a decision on the merits of the factual assertions either party made in support of any claim. *See id.*

**III.    Discussion**

Plaintiffs base the Application on allegations that Defendants are inappropriately communicating with potential class members and seeking to settle individual claims. *See* ECF No. 96. Plaintiffs request (1) that the Court order Defendants to cease such communications and only allow further communications after approval by the Court, and (2) that the Court invalidate any settlements that came from such communications. *See id.* The Court finds that the record does not

provide sufficient grounds for the Court to order defendants to cease communications with potential class members or to require all future communications be pre-approved by the Court. The Court finds that the record does, however, provide sufficient grounds for the Court, in its undisputed powers over the *Martinez* Action and this action, to order defendants to cease all misleading written communications with potential class members as well as to correct prior misleading written communications. The Court need not reach the question of whether any settlements should be invalidated and will consider this issue as needed at a later stage. Thus, the Application is GRANTED IN PART.

### A. Alleged Conduct Discussed in Application.

In their Application, Plaintiffs assert that beginning around September 5, 2024, after the Court denied final approval of the *Martinez* settlement and stayed the *Martinez* Action, Defendants began communicating with potential class members and seeking to settle individual claims. *See* ECF No. 96-1 at 5–7.

First, Defendants mailed letters (the "September Letters") to potential class members offering to settle the individual recipients' claims. *See* ECF No. 96-5 at 5–6 (example of a September Letter). The September Letters referenced, in their subject lines, both this action and the *Martinez* Action. *See id.* Defendants offered potential class members between $75 and $250 to settle their claims. *See* ECF No. 96-1 at 7 n.7.

Plaintiffs assert that the September Letters were misleading in multiple respects. Most critically, the September Letters did not state that the Court had denied final approval of the *Martinez* settlement. *See id.* at 6. Potential class members previously received the Class Notices described above via mail regarding the settlement negotiated in the *Martinez* Action (which the Court later declined to approve), and Plaintiffs submitted a declaration from one potential class member stating that she was confused as a result, assuming that the September Letter was a follow-up to the Class Notice regarding the previous settlement, as opposed to a separate offer made after that settlement was not approved. *See* ECF No. 96-5 ¶¶ 2–7. Furthermore, the individual offers in the September Letters were significantly less than the not-approved *Martinez* settlement would have been—the previous settlement would have delivered class members approximately $434 each, while

the individual offers in the September Letters were for $75 to $250. *See* ECF No. 53 at 9. Additionally, the September Letters were purportedly misleading in that they did not include any other information that a recipient would need to evaluate the value of their individual claims. *See* ECF No. 96-1 at 6.

Second, Plaintiffs assert that Defendants have had inappropriate in-person conversations encouraging individual potential class members to settle. Plaintiffs assert that on September 18, 2024, a manager at Defendants' Tulare facility addressed drivers and made a series of statements on the litigation against Defendants, including that the lawsuits were "ridiculous," that employees would never receive more than the offers in the September Letters, and that the attorneys were driving the litigation to make themselves money. *See id.* at 18–19; *see also* ECF No. 96-4 ¶¶ 4–13. The manager purportedly then handed out copies of settlement offers and release forms. *See* ECF No. 96-1 at 19, ECF No. 96-4 ¶ 11. Defendants concede that a manager at the Tulare facility spoke to employees about the litigation on September 18, 2024, but dispute the substance of the conversation. *See* ECF No. 97 at 13.

Plaintiffs assert that the September Letters and the in-person communications were not only misleading but were also improper communications with represented parties. Some of the potential class members that received the September Letters are purportedly represented by Plaintiffs' counsel. *See* ECF No. 96 at 3. And one of the individuals present for the in-person conversation described above, Kaczanowski, was a named plaintiff in this action and is represented. *See* ECF No. 96-1 at 19. Defendants assert that the manager who spoke to Kaczanowski was not aware that Kaczanowski was a named plaintiff and represented. *See* ECF No. 97 at 13.

Finally, Plaintiffs assert that one more similarly misleading conversation occurred with a potential class member at another of Defendants' facilities on September 20, 2024. *See* ECF No. 98. Defendants concede that some conversation occurred but dispute the specifics of what was discussed and argue that it was not misleading, and no pressure was applied for settlement. *See* ECF No. 108.

**B. Courts May Limit Communications with Potential Class Members, but Only Through Narrowly Drawn Orders Based on Specific Findings of Fact.**

Federal Rule of Civil Procedure 23(d) allows a court overseeing a class action to exercise various powers to manage the case. *See* Fed. R. Civ. P. 23(d)(1). These powers explicitly include the authority to "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument," to require notice be given to class members in order "to protect class members and fairly conduct the action," to "impose conditions on the representative parties or on intervenors, and to "deal with similar procedural matters." *See id.*

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–104 (1981), the Supreme Court held that a court may limit communications pursuant to the court's Rule 23(d) powers, but that an order limiting communications with class members must be narrowly drawn in response to specific findings. In *Gulf Oil*, the Supreme Court addressed a lower court's order that had "imposed a complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court." *See id.* at 95. The lower court that issued this order made "no findings of fact and did not write an explanatory opinion." *See id.* at 96. The Supreme Court held that the lower court's order was invalid. *See id.* at 99–104. The Supreme Court recognized that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See id.* at 100. However, as the Supreme Court explained, such orders can cause problems and inappropriately limit parties' rights to communicate about the litigation, so "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *See id.* at 101. This weighing must identify "potential abuses being addressed," and the resulting order must be "carefully drawn" in order to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *See id.* The Supreme Court also noted that such orders may raise constitutional issues as to parties' First Amendment rights, but did not reach the issue, discussing only the authority conferred by Rule 23. *See id.* at 101 n.14 ("We do not reach the question of what requirements the First Amendment may impose in this context. Full consideration of the

constitutional issue should await a case with a fully developed record concerning possible abuses of the class-action device.").

There is a broad consensus among district courts interpreting *Gulf Oil* and Rule 23(d) that a court may "take action to cure inaccurate, confusing or misleading communications" from parties to potential or actual class members, as such communications "pose a threat to the fairness of the litigation process, the adequacy of representation and the administration of justice." *In re Apple Inc. Device Performance Litig.*, Case No. 5:18-md-02827, 2018 WL 4998142, *4 (N.D. Cal. Oct. 15, 2018); *see also Cheverez v. Plains all Am. Pipeline, LP,* Case No. 2:15-cv-04113, 2016 WL 861107, *3 (C.D. Cal. Mar. 3, 2016) ("a court may 'take action to cure the mis-communication and to prevent similar problems in the future' where 'potential class members have received inaccurate, confusing or misleading communications.' [citation to another district court]"); *Johnson v. Ameriprise Fin.*, Case No. 4:07-cv-03168, 2008 WL 11417643, *1 (N.D. Cal. Apr. 4, 2008) ("The court's Rule 23(d) powers include the authority to enjoin communications with class members to protect them from undue interference."). But, as *Gulf Oil* made clear, such orders must be carefully drawn based on findings of fact. *See Gulf Oil*, 452 U.S. at 101. District courts typically hold that an order limiting communications need not be based on "a finding of actual misconduct" or "a finding of actual harm," but that at minimum, there must be facts showing "potential interference with the rights of the parties in a class action." *See In re Apple*, 2018 WL 4998142 at *4 (collecting cases).

**C. Plaintiffs Have Shown that Defendants' Written Communications Were Confusing.**

The Court finds that the September Letters are, at the very least, confusing, if not inaccurate or misleading. As one court wrote in a nonbinding opinion, examples of misleading or abusive communications that would warrant court intervention are "communications that misrepresent the status or effect of the pending action or have the potential for confusion." *See In re Apple*, 2018 WL 4998142 at *4. This Court finds it reasonable to take a similar approach and holds that communications can only justify an injunctive if they meet this or some similar definition, based on the guidance by the Supreme Court in *Gulf Oil*. *See Gulf Oil*, 452 U.S. at 101 ("an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference

with the rights of the parties"). The September Letters certainly meet this threshold as they have the potential for confusion in light of the prior Class Notice already distributed.

Plaintiffs assert that the September Letters were misleading in that (1) they did not explicitly state that the Court had denied approval of the *Martinez* settlement, (2) they were sent as a follow up to the *Martinez* preliminary settlement notifications, and thus might be construed as the next step as to that settlement, and (3) they lacked information to evaluate claims. *See* ECF No. 96-1.

The Court finds the following facts in support of this Order. First, the Court finds that the original Class Notice informed potential class members that there had been a settlement in the *Martinez* action and that class members would be part of the settlement if approved unless they affirmatively opted out. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 62-4 at 8–23 (C.D. Cal. Apr. 10, 2024). The Court also finds that the Defendants sent the September Letters as asserted by Plaintiffs.[2] *See* ECF No. 96-5 at 6–9. In light of the prior Class Notice, the Court finds that the September Letters are confusing.

First, they both began with a similar title or heading. The Class Notice (sent March 2024) began with the following:

> To: All current and former over-the-road drivers employed by Knight Transportation, Inc. who were California residents or assigned to work out of a location in California from April 6, 2016 through December 5, 2023.
>
> You are receiving this Notice because a proposed settlement has been reached in the following case pending in the United States District Court for the Central District of California: *Raul Martinez and Philippe Vieux v. Knight Transportation, Inc.*, Case No. 5:21-cv-00572-MEMF-SP (the "Lawsuit"). You may be entitled to benefits as a member of the Settlement Class if the Court approves the settlement described in this Notice. Your options with respect to the Settlement and as a member of the Settlement Class are explained in further detail below.

*See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 62-4 at 8 (C.D. Cal. Apr. 10, 2024). And the September Letters began with the following:

---

[2] Defendants appear to acknowledge that they sent the September Letters, or at least do not make any serious attempt to dispute that they did so. *See* ECF No. 96 at 13 (Defendants argue that "there is nothing in the release agreements, letters accompanying them, or any communication from Defendants that could have reasonably led putative class members to have the alleged misunderstanding," but do not dispute that they sent release agreements via mail alongside letters, and do not dispute the specific contents).

> Re: Settlement and Release of Claims Alleged in *Hamilton et al. v. Knight Transportation Inc. and Knight Port Services LLC*; U.S. District Court for the Central District of California Case no. 5:21-cv-01859 and *Martinez v. Knight Transportation Inc. et al.*, U.S. District Court for the Central District of California Case no. 5:21-cv-00572 (the "Lawsuits")
>
> Dear [Name]:
>
> This is an offer to resolve any claim you may have in the above lawsuits, as described further below. If you sign and return the enclosed agreement or cash the enclosed check, you will release your claims in the Lawsuits.

*See* ECF No. 96-5 at 5.[3]

This gives the impression that the "settlement" discussed in the letter is the same "settlement" that was preliminarily approved by the Court in the Class Notice. Nowhere do the September Letters make reference to the original proposed settlement or distinguish what is being offered from the original proposed settlement.

Second, the September Letters state "The court has not determined that these cases can proceed as a class action or that Defendants will face any liability." *See* ECF No. 96-5 at 5. This is confusing in light of the fact that the original Class Notice stated that the Court had certified the Settlement Class, albeit for purposes of Settlement only. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 62-4 at 5 (C.D. Cal. Apr. 10, 2024). Third, because the letter does not make any reference to the proposed settlement in the Class Notice, it does not explain how the letter and this new settlement falls within the two paths identified in the Class Notice ("WHAT HAPPENS IF THE COURT APPROVES THE SETTLEMENT?" and "WHAT HAPPENS IF THE COURT DOES NOT APPROVE THE SETTLEMENT?"). *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 62-4 at 11 (C.D. Cal. Apr. 10, 2024). Fourth, because the letter does not make any reference to the proposed settlement in the Class Notice, it does not explain that the letter and any attached check is not the payment previously referred to in the Class Notice. This is particularly confusing because the Class Notice suggests that checks will be sent and releases effectuated once the settlement in the Class

---

[3] Although it is true that the letters mentioned both the *Martinez* Action and this action (*Hamilton*) in their subject lines, *see* ECF No. 96-5 at 3, this does not alleviate the confusion caused by failing to distinguish the prior settlement, as described below.

1 Notice is approved by the Court. *See id.* at 10 ("An individual in the Settlement Class is not required to submit a claim form in order to be eligible for and to receive a Class Member Payment."). Finally, the Class Notice repeatedly makes reference to a settlement that has been reached, which makes the letter's discussion of an offer to resolve a claim even more confusing. *See, e.g.*, *id.* at 9 ("The parties participated in prolonged settlement discussions and *reached a Settlement. The Settlement resolves all claims* in the Lawsuit." (emphasis added)).

Defendants' argument that they are "entitled to negotiate releases regardless of the Court's views of the fairness of the proposed class settlement in *Martinez*" misses the point. *See* ECF No. 97 at 11. To be clear, the Court does not find that governing law requires that all settlement offers must provide updates on class settlement. Where, however, as here, a Court-approved notice has already gone out describing a preliminarily approved settlement and next steps in detail, a further communication that makes reference to a "settlement" without distinguishing the prior "settlement" that had been "reached" and "preliminarily approved" is confusing.

With respect to the Plaintiffs' third assertion—that the September Letters were misleading because they lacked the information individuals needed to evaluate their claims—there does not appear to be any authority that requires this and it would appear to this Court that it is not uncommon for a settlement offer not to include all information that the recipient might use to evaluate whether he or she should settle. This Court therefore does not find that the letters were misleading in this respect.

**D. The Confusing Nature of the Written Communications Justifies a Limited Injunction.**

Having found that the written communications are confusing, the Court finds that a limited injunction is in order to correct the confusing nature of the past communications and ensure that future communications are not similarly misleading. Such an injunction is justified under *Gulf Oil*

1  and Rule 23 which grant this Court the power to take action to cure confusing communications with
2  class members.[4]

3  Accordingly, in any further communications, the Defendants must make clear that Court
4  denied final approval of the preliminarily approved settlement discussed in the Class Notice and that
5  the new offer is just that—a new offer not preliminarily approved by the Court or considered by the
6  Court at all. In addition, the Defendants must communicate this same information to any individuals
7  who received the prior confusing letter, whether or not they accepted the new offer or not.

### E. The Communications with Represented Parties Pointed to by Plaintiffs Do Not Justify an Injunction.

Plaintiffs argue that Defendants have inappropriately communicated with represented parties, both through written communications with potential class members and in-person communications with Kaczanowski. The Court finds that this does not warrant an injunction.

First, the weight of authority suggests that under the California Rules of Professional Conduct, potential class members are not represented by class counsel prior to class certification. *Atari, Inc. v. Superior Ct.*, 166 Cal. App. 3d 867, 873 (Ct. App. 1985) ("We cannot accept the suggestion that a potential (but as yet unapproached) class member should be deemed a party represented by counsel even before the class is certified"); *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 736 (Ct. App. 2003) (same, citing *Atari*). Some authority points the other direction. *See Pollar v. Judson Steel Corp.*, Case No. 3:82-cv-06833, 1984 WL 161273, *1 (N.D. Cal. Feb. 3, 1984) (without analysis of the issue, describing potential class members pre-certification as "class members who are represented by counsel"). A holding that class members are by default "represented" by class counsel prior to certification, which would suggest that Defendants' counsel cannot communicate with potential class members at all except through class counsel, would appear to contravene the Supreme Court's guidance in *Gulf Oil* that "an order limiting communications

---

[4] Because the Court finds that the Court has the power to correct misleading communications under Rule 23(d), as explained by the Supreme Court in *Gulf Oil*, the Court need not reach Defendants' other arguments, including that Plaintiffs lack standing to seek this injunction and that Plaintiffs failed to analyze the typical factors for a TRO.

between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"—this record and findings would be unnecessary if such communication was already prohibited by ethical rules. *See Gulf Oil*, 452 U.S. at 101. Potential class members have not chosen to be represented, and so Defendants may communicate with them until the step of class certification is complete and a legal relationship is accordingly established.

The Court finds, based on the record submitted, that to the extent that Defendants communicated through defense counsel with specific named plaintiffs, such communications were likely inadvertent. First, as to Kaczanowski, who Defendants communicated with in person, Kaczanowski conceded in his declaration that "I presume [Defendants' representative] did not know who I was." *See* ECF No. 96-4 ¶ 5.[5] Plaintiffs have not pointed to any recipients of the September Letters who were represented, except for Stanley Heath and Michelle Allman, who are not named plaintiffs, and were, per Plaintiffs, represented by Plaintiffs' counsel in depositions. *See* ECF No. 96-1 at 5. There is no evidence that these individuals received letters different from any other potential class members, and the Court finds that they received the letters due to a presumably inadvertent failure to remove them from the list of recipients. Defendants should strive to avoid any such communications with represented parties in the future, but the Court will not issue an injunction because of these inadvertent communications.

### F. The Court Declines to Invalidate Any Individual Settlements That May Have Been Reached.

Importantly, the Court is not reaching in this Order the issue of whether any settlements that have been reached should be invalidated because of the confusing nature of the written communications. Consideration of whether specific settlements should be invalidated would require more information and a properly noticed motion, including more detail on how many settlements were consummated and the circumstances around individuals' acceptances thereof. The Court might

---

[5] The communication with Kaczanowski was also made a non-lawyer, and so it appears to the Court that it was not prohibited by the rule regarding communications by counsel with represented parties. *See* ECF No. 96-4.

later find it appropriate to invalidate settlements, but the only issue here is whether the record justifies an injunction. This Order is without prejudice as to Plaintiffs' right to seek to have settlements invalidated at some later stage.

### G. Plaintiffs Have Not Otherwise Shown That the Broad Injunction They Seek Is Justified.

Plaintiffs also seek to have the Court broadly enjoin the Defendants' communications with potential class members on the ground that the settlement offers being made are lower than the average in the prior preliminarily approved Settlement. Even assuming that individuals would receive less in the recent settlements sent via the September Letters than they would have in the settlement that the Court did not approve, that fact alone does not make the offers improper or confusing. As discussed above, failing to distinguish the prior settlement does. There does not appear to be any authority suggesting that a court may enjoin a defendant from making individual settlement offers simply because the offers are too low. The Court therefore declines to enjoin the Defendants from making settlement offers in their discretion.

In addition, Plaintiffs seek to have the Court broadly enjoin the Defendants' in-person communications. The Court finds that the record as to the in-person communications does not show abuse sufficient to justify restraining Defendants' speech as to the litigation.[6] Even assuming that no actual harm must be shown, there must be some record justifying the restriction, and the Court does not find this record sufficient.

To be clear, the Court will not enjoin the Defendants from making future settlement offers that are clear and not confusing in the ways identified at this time. Plaintiffs have not shown that this falls within the Court's authority under *Gulf Oil* and Rule 23(d), nor have they otherwise shown that the TRO factors are met with respect to this issue—primarily because they have not established that

---

[6] The record is muddled as to what exactly occurred in the in-person communications, and the Court finds that the record is not sufficient to make a factual finding at this time that the in-person communications were confusing. Furthermore, the injunction sought with respect to the in-person communications is unduly broad and burdensome. Defendants assert that the first conversation was unplanned and occurred after a manager overheard employees discussing the lawsuit and potential settlement. *See* ECF No. 97-1. The Court is not inclined to restrict such a person's right to opine on the litigation without more justification.

they are likely to succeed on a claim that governing law prohibits individual settlements. The Court's prior orders did not address individual settlements, and to the extent that they contemplated the nature and sequence of future proceedings in the *Martinez* and *Hamilton* cases, they did not contemplate or address the negotiation of individual settlements.

### IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Application for a Temporary Restraining Order is GRANTED IN PART;
2. The Defendants are ENJOINED from continuing to make written settlement offers without the clarifications noted above;
3. The Defendants are ORDERED to properly advise all individuals who have received the September Letters in the manner described above and file notice with the Court that they have done so within twenty-one (21) days of the date of this Order.
4. The parties are ORDERED to meet and confer, and within seven (7) days of this Order, file a joint status report with proposed dates for a hearing to show cause why a preliminary injunction should not issue with restrictions regarding misleading communications similar to those in this Order.

IT IS SO ORDERED.

Dated: January 2, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge