O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNY HAMILTON, ANTHONY KILLION, KRISTOPHER KACZANOWSKI, LEROY COKER, DARREL BROWN, on behalf of themselves and all other similarly situated employees,<br><br>                      Plaintiffs,<br><br>       v.<br><br><br><br>KNIGHT TRANSPORTATION INC. dba Arizona Knight Transportation Inc.; KNIGHT PORT SERVICES, LLC; and DOES 1 through 25, inclusive,<br><br>                  Defendants. | Case No.:  5:21-cv-01859-MEMF-SP<br><br>**ORDER GRANTING IN PART MOTION FOR CLASS CERTIFICATION AND GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 93, 93-13]** |

Before the Court are a Motion for Class Certification (ECF No. 93) and a Request for Judicial Notice (ECF No. 93-13) filed by Plaintiffs Darrell Brown, Leroy Coker, Bennie Hamilton, Kristopher Kaczanowski, and Anthony Killion. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion for Class Certification and GRANTS the Request for Judicial Notice.

/ / /

/ / /

/ / /

1

1    **I.    Background**

2        **A.  Background as to this Litigation**

3        Plaintiff Bennie Hamilton ("Hamilton") filed a class action complaint in this Court on

4    November 2, 2021. ECF No. 1. He has since filed a First Amended Complaint, a Second Amended

5    Complaint, a Third Amended Complaint, and a Fourth Amended Complaint. *See* ECF Nos. 10, 42,

6    66, 74. In the Fourth Amended Complaint ("FAC"), Hamilton is joined by Plaintiffs Anthony

7    Killion ("Killion"), Kristopher Kaczanowski ("Kaczanowski"), Leroy Coker ("Coker"), and Darrell

8    Brown ("Brown," or collectively with Hamilton, Killion, Kaczanowski, and Coker, "Plaintiffs"). *See*

9    ECF No. 74. Plaintiffs bring suit in the FAC against Defendants Knight Transportation Inc. ("Knight

10   Transportation") and Knight Port Services, LLC ("Knight Port," or collectively with Knight

11   Transportation, "Defendants").[1] *See id.* Plaintiffs allege various wage and hour violations against

12   Knight Transportation and Knight Port.

13       **B.  The *Martinez* Action and Stay of this Action**

14       In an action distinct from this one and filed before this action, Plaintiffs Raul Martinez

15   ("Martinez") and Philippe Vieux ("Vieux") filed a class action (the "*Martinez* Action") in San

16   Bernardino County Superior Court on July 7, 2020, which was removed to this Court on April 1,

17   2021. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No.

18   1 (C.D. Cal. Apr. 1, 2021). Martinez and Vieux brought the Martinez Action against Knight

19   Transportation, and alleged various wage and hour violations on behalf of themselves and a

20   purported class. *See id*.

21       The parties to the *Martinez* Action participated in a mediation on December 13, 2023, and

22   later reached a settlement. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No.

23   5:21-cv-00572, ECF No. 37-2 ¶ 20 (C.D. Cal. July 20, 2023). Martinez filed a Motion for

24

25

26

27   ───────────────

28   [1] Defendant Kold Trans, LLC—referenced in the caption of this action on the Court's CM/ECF system, *Bennie
Hamilton v. Kold Trans, LLC et al*—was dismissed as a Defendant in the Third Amended Complaint. *See* ECF No. 66;
*see also* ECF No. 91 at 2 (Order describing procedural history in detail).

Preliminary Approval of Class and Representative Action Settlement on July 20, 2023. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 37 (C.D. Cal. July 20, 2023). The Court preliminarily approved the class settlement on December 5, 2023, finding that the Rule 23 requirements were met; the class was defined as "all persons who are or have been employed by [Knight] as employee over-the-road drivers who were California residents or assigned to work out of a location in California from April 6, 2016 through the date of Preliminary Approval (the 'Class Period')."*See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 53 at 3, 10 (C.D. Cal. Dec. 5, 2023). Pursuant to that preliminary approval, Class Notice was sent to the putative class members. *See id.*, ECF No. 62-4 at 8–23.

While final approval of the settlement in the *Martinez Action* was pending, Plaintiffs in this action became aware of the Martinez settlement and objected to it. *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 61 (C.D. Cal. Apr. 8, 2023). Pursuant to Plaintiffs' Motion, the Court stayed this action pending the determination of whether to approve the final settlement in Martinez. *See* ECF No. 91.

On June 11, 2024, the Court issued an Order denying final approval of the Martinez settlement.[2] *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 74 (C.D. Cal. Apr. 8, 2023). The Court lifted the stay in this action as a result. *See* ECF No. 99. The Martinez Action is now stayed. *See Raul Martinez et al v. Knight Transportation, Inc. et al,* Case No. 5:21-cv-00572, ECF No. 74 (C.D. Cal. Apr. 8, 2023).

### C.  The Instant Motion and Related Filings

On November 2, 2021, Hamilton filed the instant action on behalf of himself and others similarly situated alleging causes of action for violations under the Rest Break laws, Cal. Labor Code § 226.7(a); Improper Meal Periods laws, Cal. Labor Code §§ 226.7(a) and 512(a);

---

[2] The Court later denied Knight's Motion to Modify this Order, finding that the Court had accurately described Knight's position with respect to the proposed settlement. ECF No. 91.

Reimbursement for Business Expenses laws, Cal. Labor Code §§ 2800 and 2802; Unlawful Wage Deduction laws, Cal. Labor Code §§ 221 and 224; Inaccurate Wage Statement laws, Cal. Labor Code § 226(a); and Unfair and Unlawful Business Practices law, Cal. Bus. & Prof. Code § 17200.

Plaintiffs filed a Motion for Class Certification on July 11, 2024. *See* ECF No. 93 ("Motion" or "Mot."). Defendants filed its opposition on September 23, 2024. *See* ECF No. 100 ("Opposition" or "Opp."). Plaintiffs filed their reply on December 5, 2024. *See* ECF No. 114 ("Reply"). On July 11, 2024, Plaintiffs filed a Request for Judicial Notice. *See* ECF No. 93-13 ("RJN").

In connection with the Motion, the parties also filed evidentiary objections.[3] Defendants filed a Defendants' Evidentiary Objections in Opposition to Plaintiffs' Motion for Class Certification. ECF No. 107 ("Evidentiary Objections"). Plaintiffs filed a Plaintiffs' Response to Defendants' Evidentiary Objections in Opposition to Plaintiffs' Motion for Class Certification, ECF No. 122 ("Response"); an Objection to Declaration of Robert Crandall In Support of Reply to Opposition to Re: Notice of Motion and Motion to Certify Class, ECF No. 123 ("Objection to Crandall Decl."); an Objection to Evidence (Witness Declarations) in Support of Defendants' Opposition to re: Notice of Motion and Motion to Certify Class, ECF No. 124 ("Objection to Opp. Evidence 1"); an Evidentiary Objections to Defendants' Evidence in Support of Opposition to Re: Notice of Motion and Motion to Certify Class, ECF No. 125 ("Objection to Opp. Evidence 2"); and an Evidentiary Objections to Defendants' Evidence in Support of Opposition to re: Notice of Motion and Motion to Certify Class, ECF No. 127 ("Objection to Opp. Evidence 3").

/ / /

/ / /

---

[3] In preparing this Order, the Court considered the parties' evidentiary objections. ECF No. 107, 122, 123, 124, 125, 127. The Court did not find any evidence that either party objected to essential to finding stated herein, except where explicitly stated otherwise. The Court need not reach any objection except those addressed in this Order. Similarly, given that the Court grants class certification despite the assertions by Crandall (and denies class certification for one subclass without reliance on the Crandall declaration), the Court need not reach the Plaintiffs' Objection or request to strike Crandall's declaration. Reply at 6 ("Crandall's declaration should be struck for the reasons set forth in Plaintiffs' Objections to the Crandall report . . . .").

**REQUEST FOR JUDICIAL NOTICE (ECF NO. 93-13)**

**I.    Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

**II.    Discussion**

The Plaintiffs request that the Court take judicial notice of two documents. *See* RJN, Ex. 1 (the documents). The documents are: (1) a letter from Boise Cascade LLC Legal Department ("Boise") to the Division of Labor Standard Enforcement ("DLSE") requesting DLSE to advise whether Boise's proposed program of electronic delivery of wage statements is approved; and (2) a letter from the DLSE responding to Boise's inquiry regarding electronic itemized wage statements and explaining California Labor Code § 226(a), which requires employers to include accurate information on their employees' wage statements. *Id*.

The Court finds it appropriate to take judicial notice of both documents. Their existence and authenticity can be "readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). The Court will take judicial notice of the fact that these documents exist and their contents, but not of any disputed issues of fact contained within the documents. *See Lee*, 250 F.3d at 690.

The Request for Judicial Notice (ECF No. 93-13) is GRANTED.

**MOTION FOR CLASS CERTIFICATION (ECF NO. 93)**

**I.    Applicable Law**

A district court has broad discretion in making a class certification determination under Federal Rule of Civil Procedure 23. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also*

*Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23"). However, a court must exercise this discretion "within the framework" of the Rule. *Navellier*, 262 F.3d at 941. Under Rule 23, a court may only certify a class if the following prerequisites are met:

> (1) Numerosity: The class must be so numerous that joinder of all members individually is "impracticable";
> (2) Commonality: There must be questions of law or fact common to the class;
> (3) Typicality: The claims or defenses of the class representative must be typical of the claims or defenses of the class; and
> (4) Adequacy of Representation: The class representative must be able fairly and adequately to protect the interests of all members of the class.

Fed. R. Civ. Proc. 23(a). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a plaintiff "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* In evaluating whether the Rule 23(a) prerequisites have been met, a district court should consider whether the claims are supported by a preponderance of the evidence. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

### A. Numerosity

Numerosity is typically presumed at a level of a few dozen members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members").

### B. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50. The claims of the proposed class members "must depend upon a common contention," which "must be of such a nature that is capable of class wide resolution—which means that determination of its truth or falsity will resolve *an issue* that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (emphasis added). As the Supreme Court reiterated in *Dukes*, to establish commonality, "even a single common question will do." *Id.* at 359 (internal quotations omitted).

### C. Typicality

1    "The test of typicality 'is whether other members have the same or similar injury, whether

2    the action is based on conduct, which is not unique to the named plaintiffs, and whether other class

3    members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d

4    497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class

5    representative, and not to the specific facts from which it arose or the relief sought." *Id.*

6    ### D. Adequacy of Representation

7    "To determine whether named plaintiffs will adequately represent a class, courts must

8    resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest

9    with other class members and (2) will the named plaintiffs and their counsel prosecute the action

10   vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corporation*, 657 F.3d 970, 985 (9th

11   Cir. 2011).

12   The Supreme Court has noted that the requirements of Rule 23(a) "also tend to merge with

13   the adequacy-of-representation requirement, although the latter requirement also raises concerns

14   about the competency of class counsel . . ." *Dukes*, 564 U.S. at 349 n.5. In appointing class counsel,

15   a court must consider: (1) "the work counsel has done in identifying or investigating potential claims

16   in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the

17   types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the

18   resources that counsel will commit to representing the class." Fed. R. Civ. Proc. 23(g)(1)(A).

19   Moreover, class counsel "must fairly and adequately represent the interests of the class." Fed. R.

20   Civ. Proc. 23(g)(4).

21   ### E. Rule 23(b) Requirements, Including Predominance

22   In addition to demonstrating that the Rule 23(a) prerequisites have been met, a party moving

23   for class certification must establish that the action falls within one of the three categories of class

24   suits provided for in Rule 23(b).

25   Plaintiffs seek to establish that the requirements of Rule 23(b) are satisfied through Rule

26   23(b)(3), which requires the Court to find that "the questions of law or fact common to class

27   members predominate over any questions affecting only individual members, and that a class action

28

7

is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.
Civ. Proc. 23(b)(3).

"The matters pertinent to these findings include: (A) the class members' interests in
individually controlling the prosecution or defense of separate actions; (B) the extent and nature of
any litigation concerning the controversy already begun by or against class members; (C) the
desirability of undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action." *Id.* "The predominance inquiry asks whether
the common, aggregation-enabling, issues in the case are more prevalent or important than the non-
common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Cooperative, Inc. v.
Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). "In order for the plaintiffs to carry their
burden of proving that a common question predominates, they must show that the common question
relates to the central issue in the plaintiffs' claim." *Id.* at 665.

### F.  The Burden of Establishing Class Certification Requirements

The moving party "bears the burden of establishing that the proposed class meets the
requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). In
carrying this burden, a plaintiff "may use any admissible evidence." *Olean Wholesale Grocery
Cooperative, Inc.*, 31 F.4th at 665. Resolution of a motion for class certification requires a "rigorous
analysis" as to whether Rule 23's requirements have been met. *Id.* at 350–51. During this analysis,
"[m]erits questions may be considered . . . *only to the extent* . . . that they are relevant to determining
whether Rule 23 prerequisites for class certification are satisfied." *Stockwell v. City & Cnty. of San
Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust
Funds*, 568 U.S. 455, 466 (2013)).

### II.    Discussion

Pursuant to Federal Rule of Civil Procedure 23(a) and (b), Plaintiffs move to certify a
proposed class and subclasses, which are defined as follows:

> Class: All former and current Drivers employed by Defendants within the State of California,
> at any time within four years prior to the filing of this lawsuit (i.e. November 2, 2017) until
> the present date.

**Subclass A:** All former and current Drivers employed by Defendants within the State of California who were not paid for all hours worked, at any time within four years prior to the filing of this lawsuit until the present date.

**Subclass B:** All former and current Drivers employed by Defendants within the State of California who were reimbursed no more than $5.00 per month for cell phone reimbursement, at any time within four years prior to the filing of this lawsuit until the present date.

**Subclass C:** All former and current Drivers employed by Defendants within the State of California who were not furnished with written wage statements and not provided the election to receive paper wage statements, at any time within four years prior to the filing of this lawsuit until the present date.

Mot. at 1–2.

This Court preliminarily approved a similar class in the *Martinez* case, which included "all persons who are or have been employed by [Knight] as employee over-the-road drivers who were California residents or assigned to work out of a location in California from April 6, 2016, through the date of Preliminary Approval." *See Raul Martinez et al v. Knight Transportation, Inc. et al*, Case No. 5:21-cv-00572, ECF No. 53 (C.D. Cal. Apr. 10, 2024).

In their Motion, the Plaintiffs identify for each subclass certain questions of law or fact that are common to the subclass and further argue for each subclass that these questions predominate over any questions only affecting individuals. The Court will first address the numerosity, typicality, and adequacy of representation requirements for the class as those appear to be largely uncontested. Because the Court understands that the subclasses are merely subsets of the proposed class, the Rule 23 requirements must be met for each subclass, and the parties do not make separate arguments with respect to the class on one hand and the subclasses on the other, the Court will address the remaining Rule 23 requirements with respect to each subclass separately—with the exception of Knight's choice of law argument that appears to apply equally to all subclasses.

/ / /

/ / /

/ / /

**A.** **The Numerosity, Typicality, and Adequacy of Representation Requirements for Certification of the Class Under Rule 23(a) Are Met**

     i.  <u>Rule 23(a)</u>

     *1. Numerosity*

The Court finds that Plaintiff's proposed class of 1969 members[4] satisfies the numerosity requirement. Mot. at 24.

     *2. Typicality*

The Court finds that the nature of Hamilton's claim is typical to those of the proposed class—Hamilton and the proposed class members would be bringing the same California Labor Code §§ 1194, 2802, and 226 claims. Defendants have not articulated any defenses Hamilton would have to overcome that are completely unique to him and would overwhelm the case such that "absent class members will suffer." *Id.* at 508. And to the extent that Knight's position is that typicality fails for the same reasons that predominance fails, the Court finds below that the predominance requirement has been met. Accordingly, the Court finds typicality met.

     *3. Adequacy of Representation*

The Court does not find any issues with the adequacy of representation in this action. First, the Court finds Hamilton to be an adequate class representative as there is no indication that this interest does not align with potential class members.

The Court further finds Hamilton's counsel, Righetti Glugoski, P.C, adequate to appoint as class counsel for the certified class under the requirements of Rule 23(g).[5] Counsel has clearly

---

[4] Declaration of John Glugoski in Support of Plaintiff's Motion for Class Certification, ECF No. 93-2 ("Glugoski Decl.") ¶ 8; Declaration of Reuben D Nathan in Support of Plaintiff's Motion for Class Certification, ECF No. 93-11 ("Nathan Decl.") ¶ 3, Ex. A only shows 26 putative class members not 1969 but there are two declarations asserting that there are potentially 1969 class members and Defendants do not object to the satisfaction of the numerosity element or otherwise address it. Declaration of Brian J. Kowalski in Support of Plaintiff's Motion for Class Certification, ECF No. 93-12 ("Kowalski Decl.") ¶ 3.

[5] "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. Proc. 23(g)(1).

dedicated significant time and resources to developing the claims in this case. *See* ECF No. 93-2 ("Glugoski Cert. Decl.") ¶ 9–60.[6] This includes conducting significant written discovery, depositions, and retention of an expert, as well as the bringing of the instant class certification motion. *Id.* Hamilton's counsel is experienced in class actions relating to employment law, privacy law, FCRA and CCCRA claims, and have litigated many consumer class action cases. *Id.* ¶ 4. The Court finds no reason to question counsel's dedication to the class, given their prior work on this case and their experience in wage and hour class actions. The Court also does not find, nor do the Defendants raise, any other conflicts such that Hamilton's counsel would not be able to fairly and adequately represent the proposed class.

Accordingly, the Court finds adequacy of representation satisfied both under Rule 23(a)(4) as well as Rule 23(g)(1) and (4).

### B. Choice of Law Does Not Defeat Certification of This Proposed Class

Defendants argue that individual choice of law questions defeat class certification for the proposed class because they preclude this Court from finding that common questions of law. Opp. at 24–25. Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each proposed class member. *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012), *overruled in part by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (overruled in part regarding standing issue). If Plaintiffs meet their burden, Defendants must show that foreign law, rather than California law, should apply to class claims. *Id.* If the interests of other states are not found to outweigh California's interest in having its law applied, California law will be applied on a class-wide basis. *Id*. To determine whether other states'

---

[6] Defendants object to Plaintiffs' introduction of Glugoski Decl. ¶¶ 25, 32, 33, 35–37, 39, 41 on the grounds that it contains "inadmissible argument of counsel", "is not properly authenticated", and "not based on personal knowledge." *See* ECF No. 107 ¶¶ 1–13. The Court finds these objections baseless and overrules them. The Court will consider the Glugoski Decl. as evidence.

interests outweigh California's interest, courts consider "(1) whether the law of the other states is materially different from California law; (2) if there are differences, whether the other state has an interest in having its law applied to decide whether a true conflict exists; and (3) if another state has an interest, the court determines which state's interest would be most impaired if its policy were subordinated to the law of another state." *Id*.

Plaintiffs argue that California has significant contact or significant aggregation of contacts to the claims of each proposed class member because Knight maintains California wage statements and withheld California employment taxes for the Driver Qualification Process ("DQP") work performed by drivers. Reply at 8 n.8. Plaintiffs point to a wage statement showing California taxes being withheld. ECF No. 93-3, Ex. 17 at 223.[7] Because Plaintiffs have met their initial burden, the burden shifts to Defendants to show that foreign law, rather than California law, should apply to its claims.

Defendants contend that foreign law should apply to the class claims because there are putative class members like Anthony Quillan who was assigned to a California terminal and was a California resident, but spending less than 20% of work time in California. Opp. at 25. Courts look to the *Ward* test to determine "whether California's ties to the employment relationship are sufficiently strong to justify its assertion of regulatory authority over the contents of an employee's wage statements." *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1240 (9th Cir. 2021) (explaining that employees covered by *Ward* test must be based for work purposes in California and perform at least some work in California). Because Anthony Quillan is a California resident and performed some work in California, California's ties to Plaintiffs and Defendants' employee relationship are

---

[7] The page is 223 according to the PDF pagination.

strong enough to justify its assertion of California law under *Ward*.[8] Defendant fails to meet its burden in showing that foreign law should apply, so the Court need not undergo the three-part analysis.

**C.    The Requirements for Certification of Subclass A (Unpaid Wage Subclass) Are Met**

The Court finds the requirements of both Rule 23(a) and (b) have been met as to the proposed Subclass A, "[a]ll former and current Drivers employed by Defendants within the State of California *who were not paid for all hours worked*, at any time within four years prior to the filing of this lawsuit until the present date."[9]

i.    Rule 23(a)

*1. Numerosity*

The numerosity requirement is relaxed for subclasses. *See* 1 Newberg and Rubenstein on Class Actions § 3:16 (6th ed.) ("When a party or a court seeks to create subclasses, it is generally settled that each subclass must independently satisfy each of the Rule 23 criteria. However, if the subclass members are also members of the larger, already certified class, courts have held that the subclass may not be required to satisfy independently the numerosity requirement.") (footnotes omitted). *Loaiza v. Kinkisharyo Int'l, L.L.C.*, 2022 U.S. Dist. LEXIS 198116, *14–15. The Court finds that subclass A members are part of the larger, already certified proposed class; therefore, subclass A is not required to satisfy independently the numerosity requirement.

/ / /

---

[8] Defendants rely on *Felicia Vidrio, et al. v. United Airlines, Inc.*, 2017 WL 1034200 (C.D. Cal. 2017) for the proposition that foreign law should apply to class members like Quillan, but the district court opinion *Vidrio* was reversed and remanded by *Ward*. See *Vidrio* at 6 (finding that California law does not apply to California residents who "performed less than 18 percent of their work in California"); see also *Ward* at 1240 (explaining that tests cited in *Vidrio*, such as job situs test and multi-factor approach, are replaced by new test: "whether California's ties to the employment relationship are sufficiently strong to justify its assertion of regulatory authority over the contents of an employee's wage statements.")

[9] This is similar to the class definition preliminarily approved in Martinez.

*2.  Commonality*

Defendants do not appear to dispute that the commonality requirement has been met with respect to the questions identified by Plaintiffs. Instead, they appear to primarily dispute that these questions constitute valid theories of liability and that they predominate as required by Rule 23(b)(3). The Court will therefore discuss the parties' arguments on the validity of the theories in this section and discuss the remaining arguments when discussing the regarding predominance requirement.

Defendants challenge one of Plaintiffs' theories of liability by asserting that the Defendants' policy on waiting time is perfectly legal. This, however, appears to be a question better addressed at the merits stage, given the showing that Plaintiffs have made that even the Defendants' written policy may not be legal.

The Defendants also challenge Plaintiffs' theory with respect to DQP, but this appears to be a question better addressed at the merits stage, given the showing that Plaintiffs have made that even the Defendants' acknowledged policy of not compensating for DQP may not be legal.

The Court finds that Plaintiffs have established common questions of law and fact exist for subclass A. Accordingly, Plaintiffs have met their burden as to the commonality element for subclass A.

*3.  Typicality*

The Court finds that the nature of Hamilton's claim is typical to those of the proposed subclass A—Hamilton and the proposed subclass A members would be bringing the same Cal. Lab. Code §§ 226.2 and 1194 claims. Defendants have not articulated any defenses Hamilton would have to overcome that are completely unique to him and would overwhelm the case such that "absent class members will suffer." *Id.* at 508. Accordingly, the Court finds typicality met for subclass A.

*4.  Adequacy of Representation*

The Court does not find any issues with the adequacy of representation in this action for the reasons stated above. *See supra* Section A(i)(4). Accordingly, the Court finds adequacy of representation satisfied both under Rule 23(a)(4) as well as Rule 23(g)(1) and (4) for subclass A.

ii.  <u>Rule 23 (b)</u>

14

1    Defendants' first argument regarding predominance is that there is substantial evidence that

2    the unwritten policies the Plaintiffs allege with respect to piece work and various forms of

3    uncompensated time were not uniform and therefore individual questions predominate, precluding

4    certification of this subclass. Opp. at 11. In particular, Defendants insist that "Plaintiffs' claims for

5    unpaid wages are premised on the *incorrect* notion that PCMs are paid piece-rate compensation

6    without any hourly component (except detention/congestion pay)." Opp. at 9 (emphasis added).

7    Therefore, according to the Defendants, Plaintiffs cannot prevail for two reasons: (1) their claims

8    have no merit which precludes class certification; and (2) to the extent that Plaintiffs can point to

9    isolated examples which appear to show that some drivers were not paid their full hourly wages,

10   these are rare and based upon individual factors regarding how individual drivers recorded their

11   time—not based upon a policy or practice—thus defeating predominance.

12   However, the Defendants have not demonstrated to this Court that their pay system indeed

13   operates as an hourly wage system which properly compensates drivers for all hours worked under

14   California law as opposed to a piece rate system, which fails to compensate drivers for all hours

15   worked under California law. Although the Defendants emphasize that Production Pay is paid *in*

16   *addition to* a direct hourly wage, and, at the hearing, even described it as a "production bonus," their

17   own declarations belie this. *See* DeJong Decl. and Yeast Decl. ¶¶ 19–21 (describing the pay system).

18   As the evidence and arguments reveal, the Hourly Pay is based *only* on the FMCSA categories of

19   "driving" and "on-duty (not driving)." But if those FMCSA categories do *not* neatly map on all of

20   the hours that California law requires to be compensated, or if the Defendants instruct their drivers to

21   use the categories in a way that does *not* neatly map on all of the hours that California law requires

22

23

24

25

26

27

28

15

to be compensated, then Hourly Pay would *not* compensate drivers for all hours worked.[10]  Frankly, it is only in light of this that the Production Pay category of pay and the various "pay adjustments" under the Trip Calculations makes sense: *because* the Hourly Pay does not compensate for all hours worked, Production Pay is sometimes paid.[11] The Court notes that although Defendants point to wage statements showing that Hamilton's pay ("gross wages") matched his Hourly Pay[12],  there are numerous other wage statements presented by the Plaintiffs where that is not the case.[13] If that is indeed the case, and if the Production Pay plus Hourly Pay plus Rest Period Pay does not compensate drivers for all hours worked under California law, the system is impermissible.

Moreover, the predominance test does not require that there be no individual issues—rather, the Court must weigh the prevalence and importance of these questions compared to the common questions identified previously. This is true even if the individualized questions relate to injury or

---

[10] The Woolsey deposition suggests that this may indeed be the case. ECF 93-3, Ex. 20. In particular, Woolsey appeared unable to confirm that certain tasks—such as breakdown—which Plaintiffs assert are required to be compensated under California law are indeed to be coded by drivers according to Defendants' policy as "driving" or "on duty (not driving)" which is the only way they would be compensated under Hourly Pay. *See id.* at 111, 116.

And the evidence regarding pay adjustments, ECF No. 93-7, Ex. 47 at 336 (a pleading from the related *Martinez* case to show that $40.97 was added to a driver's February 18, 2023 wage statement and later deducted in their February 25, 2023 wage statement); ECF No. 93-7, Ex. 43 (showing multiple wage statements containing an adjustment entry where compensation is deducted; Young Decl. ¶¶12–13 (explaining that Defendants have not paid Plaintiffs minimum wage after taking into account the adjustment deductions); ECF No. 93-6, Ex. 32 (Kaczanowski's wage statement shows that Kaczanowski was paid an hourly rate of $14.34, which is less than the $15.50 minimum wage); Crandell Decl. ¶ 35, 43 (acknowledging that the wage statements show the adjustment issue), also provide strong evidence of a policy that either amounted to an impermissible piece work system or to unlawful "borrowing" under California law. *Oman*, 9 Cal. 5th at 782-783 (finding that California law does not permit "wage borrowing")

For this reason, the Court finds the Defendants' arguments about waiting time and training time unavailing; Plaintiffs have adduced sufficient evidence that is not simply a matter of some drivers working "off-the-clock" which might preclude class certification.

[11] This is consistent with the Woolsey testimony heavily relied upon by the Plaintiffs suggesting that the Defendants do a "minimum wage cross check" because pay is primarily based upon the piece rate trip calculations. See Woolsey testimony discussed at Motion at 14.

[12] ECF No. 103-5 at 3 (both "GROSS" in the bottom left of the page and "CURRENT GROSS WAGES" at the bottom right under "California resident Company Driving Associates" equal $916.60). *Id.* at 2 (both "GROSS" in the bottom left of the page and "CURRENT GROSS WAGES" at the bottom right under "California resident Company Driving Associates" equal $688.47).

[13] ECF No. 93-7 at KT002248 (The "TOTAL" figure for "TRIP CALCULATIONS" is $1,485.47, the "Current" under "GROSS" at the bottom left of the page is $1,538.51, and the "CURRENT GROSS WAGES" is $1,078.33").

damages. *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th at 669 (rejecting argument that "Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members," and explaining that a district court should determine whether the common question predominates over individual questions "about injury or entitlement to damages"). Plaintiffs have presented substantial evidence suggesting that the policies they allege did exist, and this is sufficient. For instance, even if it is the case that some drivers were not paid on a piece rate system, the question of whether such a system requires the additional compensation predominates over the question of whether any given driver was paid on such a piece rate system, which appears to be a question that will be susceptible of fairly simple individual resolution at a later stage.[14]

Defendants' next argument with respect to predominance is that under *Oman v. Delta Air Lines*, Inc., 9 Cal. 5th 762, 781 (2020). California law permits drivers to agree to a certain form of compensation as a matter of contract, that some drivers in fact did agree that their Production Pay would cover certain services, and this would mean that individual questions about what each driver agreed to would predominate over any common question of what they were entitled to under the wage and hour laws.  According to Defendants, "Under *Oman*, California's wage and hour laws are not violated when an employee is paid on a piece-rate basis *so long as* the piece-rate pay is not 'borrowed' to compensate for time worked that is outside of the work that the employer and employee contractually agreed is covered by the piece rate." Opp. at 18.  The Defendants misread *Oman*, it does not endorse the idea that employees can contractually agree to be paid less than minimum wage. To the contrary, the California Supreme Court held as follows in *Oman*:

> Synthesizing the authorities, we summarize the principles this way. The compensation owed employees is a matter determined primarily by contract. Compensation may be calculated on a variety of bases: Although nonexempt employee pay is often by the

---

[14] And frankly, the individual proof that the Plaintiffs intend to adduce would appear to assist in determining the answer to the common question of how the Defendants' wage system *actually* operated.

hour, state law expressly authorizes employers to calculate compensation by the task or piece, by the sale, or by any other convenient standard. . . . .

*Whatever the task or period promised as a basis for compensation, however, an employer must pay no less than the minimum wage for all hours worked.* The employer must satisfy this obligation while still keeping any promises it has made to provide particular amounts of compensation for particular tasks or periods of work.

*Oman*, 9 Cal. 5th at 781–82, (2020) (internal citations omitted).In fact, it appears that the Plaintiffs' claims trigger similar questions to those posed in *Oman*:

Whether a particular compensation scheme complies with these obligations may be thought of as involving two separate inquiries. First, for each task or period covered by the contract, is the employee  paid at or above the minimum wage? Second, are there other tasks or periods not covered by the contract, but within the definition of hours worked, for which at least the minimum wage should have been paid?

*Oman*, 9 Cal. 5th at 782.

With respect to these Plaintiffs, the questions that Defendants pose appear to be a merits question, and frankly, the common question of whether drivers *could* bargain away their entitlement to be paid an hourly wage and whether they did would predominate and guide the individual questions.

Accordingly, the predominance requirements under Rule 23(b) are satisfied for subclass A. Because all requirements are met, the Court GRANTS certification as to subclass A.

**D.    The Requirements for Certification of Subclass B (Cell Phone Subclass) Are Not Met**

As explained next, the Court finds not all of the requirements of Rule 23(a) and (b) have been met as to the proposed subclass B—"[a]ll  former and current Drivers employed by Defendants within the State of California who were reimbursed no more than $5.00 per month for cell phone reimbursement, at any time within four years prior to the filing of this lawsuit until the present date." Mot. at 2.

i.  Rule 23(a)

*1. Numerosity*

The Court finds that subclass B members are part of the larger, already certified proposed class; therefore, subclass B is not required to satisfy independently the numerosity requirement.

### 2. Commonality

As with Subclass A, Defendants do not appear to dispute that the commonality requirement has been met with respect to the question identified by Plaintiffs. Instead, they appear to primarily dispute that this question predominates as required by Rule 23(b)(3). The Court finds that the commonality requirement has otherwise been met.

### 3. Typicality

The Court finds that the nature of Hamilton's claim is typical to those of the proposed subclass B—Hamilton and the proposed subclass B members would be bringing the same Cal. Lab. Code § 2802 claim. Defendants have not articulated any defenses Hamilton would have to overcome that are completely unique to him and would overwhelm the case such that "absent class members will suffer." *Id.* at 508. Accordingly, the Court finds typicality met for subclass B.

### 4. Adequacy of Representation

The Court does not find any issues with the adequacy of representation in this action for the reasons stated above. *See supra* Section A(i)(4). Accordingly, the Court finds adequacy of representation satisfied both under Rule 23(a)(4) as well as Rule 23(g)(1) and (4) for subclass B.

### ii.  Rule 23 (b)

Defendants' primary argument against the predominance requirement is that whether (1) personal phone use was necessary for each class member, (2) $5 was sufficient reimbursement for each subclass B member based on time and data usage, and (3) a subclass B member who exceeded the $5 monthly cap on cell phone reimbursement submitted a claim for the additional amount requires individualized inquiries that would predominate over the common questions of whether Defendants are liable for unreimbursed business expenses. Opp. at 23–34.

Plaintiffs claim with respect to cell phones is based upon the premise that there were at least some occasions where cell phone use was required by drivers to accomplish their required duties and therefore cell phone use constituted an expense the Defendants were required to reimburse for and, importantly, that "[t]he accurate measure [of this reimbursement] should be the cost which an employer would incur to provide employees the necessary functionality to perform their duties." Reply at 5. But Defendants contend—and Plaintiffs do not reasonably dispute that cell phones were

not required by drivers to accomplish their required duties. In fact, it appears undisputed that drivers could use their Zonar tablets to accomplish all of their required communications. The only time they could not use their Zonar tablets for communicating was when a vehicle was in motion as the Zonar tablets are disabled when a vehicle is in motion. Plaintiffs do not explain the circumstances under which a driver would be required to communicate when a vehicle was in motion. (Common sense would suggest that Defendants discourage their drivers from using cell phones when their vehicles are in motion, for safety reasons.)

For this reason, Plaintiffs are unable to show that the policy—be it $0 with the possibility of making an individualized request for a higher amount or $5 with the possibility of making an individualized request for a higher amount—violates California law. Plaintiffs did not point to any drivers who made an individualized request that was denied, but even if this occurred, the individualized questions about a given driver's reimbursement request would predominate.

Accordingly, the predominance requirements under Rule 23(b) are not satisfied as to subclass B. The Court finds that this precludes certification of subclass B. The Court therefore DENIES certification as to subclass B.

**E.     The Requirements for Certification of Subclass C (Wage Statement Subclass) Are Met in Part**

As explained next, the Court finds the requirements of both Rule 23(a) and (b) have been met in part as to the proposed subclass C—"[a]ll former and current Drivers employed by Defendants within the State of California who were not furnished with written wage statements and not provided the election to receive paper wage statements, at any time within four years prior to the filing of this lawsuit until the present date." Mot. at 2.

i.   Rule 23(a)

*1. Numerosity*

The Court finds that subclass C members are part of the larger, already certified proposed class; therefore, subclass C is not required to satisfy independently the numerosity requirement.

/ / /

/ / /

20

### 2. Commonality

Plaintiffs argue that subclass C has suffered the same injury due to Defendants' failure to provide written or accurate wage statements. Mot. at 2. Under California Labor Code § 226(a), an employer must provide employees with wage statements in writing showing gross wages earned, total hours worked by the employee, the number of piece-rate units earned, all deductions, net wages earned, the dates for which the employee was paid, the name of the employee and their social security number, and the name and address of the employer. Cal. Lab. Code § 226(a).

In response, the Defendants argue that Plaintiffs' accurate wage statement claims fail as they are derivative of their unpaid wage claims. Mot. at 19. Because the Court finds that Plaintiffs raised common questions regarding its unpaid wage claims, the Court also finds that Plaintiffs present common questions of law as to whether Defendants violated section 226 by providing inaccurate statements. Mot. at 2.

Thus, even if Plaintiffs have not shown that common question of law or fact apply to subclass C as to Defendants' alleged failure to furnish printed wage statement, they have shown a common question of fact as to whether Defendants violated accurate wage statement requirements under Cal. Lab. Code § 226 by providing inaccurate wage statements. Because Plaintiffs have met their burden as to the inaccurate wage statements, the commonality element is satisfied for subclass C.

### 3. Typicality

The Court finds that the nature of Hamilton's claim is typical to those of the proposed subclass C—Hamilton and the proposed subclass C members would be bringing the same Cal. Lab. Code § 226 claims. Defendants have not articulated any defenses Hamilton would have to overcome that are completely unique to him and would overwhelm the case such that "absent class members will suffer." *Id.* at 508. Accordingly, the Court finds typicality met for subclass C.

### 4. Adequacy of Representation

The Court does not find any issues with the adequacy of representation in this action for the reasons stated above. *See supra* Section A(i)(4). Accordingly, the Court finds adequacy of representation satisfied both under Rule 23(a)(4) as well as Rule 23(g)(1) and (4) for subclass C.

ii.  Rule 23 (b)

Defendants' primary argument against the predominance requirement is that whether any of the wage statements cited by Plaintiffs are actionable requires individualized inquiries that would predominate over the common questions of whether Defendants are liable for wages statement violations. Opp. at 20. Given the derivative nature of these claims, the Court finds that the predominance requirement is met in light of its findings above with respect to Subclass A.

It does appear, however, that Plaintiffs' evidence in support of the idea that there was a policy or practice to not provide paper wage statements is primarily based on evidence that some drivers had difficulty obtaining paper wage statements and/or did not understand that they could request paper wage statements. ECF No. 101 ("Defendants' Compendium of Evidence" or "COE") ¶ 27. *Compare* ECF No. 93-8 ("Killion Declaration" or "Killion Decl.") ¶ 39 (stating "Knight never provided me with a written wage statement. The *only* way I could access my wage statements was on-line or ask my supervisor or driver manager. My supervisor or driver manager were not interested in my questions and essentially discarded any comments I made regarding not receiving paper wage statements.") (emphasis added) *with* ECF No. 105-9 ("Killion Deposition" or "Killion Depo.") at 119:2124 (stating "I never asked directly if I could get my wage statements in paper form because it was my understanding that Knight's policy was they would only be available in electronic form."). It does not appear that common questions predominate with respect to this issue of receiving paper wage statements upon request. Therefore, the Court only finds predominance met with respect to the *accuracy* of the wage statements (the derivative claim) for subclass C.

Because all requirements are met, the Court GRANTS certification as to subclass C with respect to accurate wage statements only.

### III.  **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  The Request for Judicial Notice of (1) a letter from Boise to the DLSE requesting DLSE to advise whether Boise's proposed program of electronic delivery of wage statements is approved; and (2) a letter from the DLSE to Boise responding to Boise's inquiry regarding electronic itemized wage statements and explaining California Labor Code § 226(a), which

requires employers to include accurate information on their employees' wage statements (ECF No. 93-13) is GRANTED.

2. The Motion for Class Certification (ECF No. 93) is GRANTED IN PART:

    a. The Court CERTIFIES the following classes:

        i. The Proposed Class: All former and current Drivers employed by Defendants within the State of California, at any time within four years prior to the filing of this lawsuit (i.e., November 2, 2017) until the present date;

        ii. Subclass A: All former and current Drivers employed by Defendants within the State of California who were not paid for all hours worked, at any time within four years prior to the filing of this lawsuit until the present date; and

        iii. Subclass C: All former and current Drivers employed by Defendants within the State of California who were not furnished with *accurate* wage statements, at any time within four years prior to the filing of this lawsuit until the present date.

    b. The Court DENIES certification of Subclass B.

IT IS SO ORDERED.

Dated: June 3, 2025

                      MAAME EWUSI-MENSAH FRIMPONG

                      United States District Judge